UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MELISSA D. GILBERT,

    Plaintiff,

v.                                                 Case No: 2:16-cv-840-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Melissa D. Gilbert seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** pursuant to 42 U.S.C. § 405(g), sentence four.[1]

---

[1] Both parties have consented to the jurisdiction of the United States Magistrate Judge. Docs. 12, 13.

I. Issue on Appeals[2]

Plaintiff raises three issues on appeal:[3] (1) whether substantial evidence supports the Administrative Law Judge's ("ALJ") severity findings; (2) whether the ALJ properly assessed Plaintiff's residual functional capacity ("RFC"); and (3) whether new evidence submitted to the Appeals Council warrants remand.

II. Summary of the ALJ's Decision

Plaintiff filed her applications for DIB and SSI on March 28, 2012, alleging her disability began August 12, 2011 due to dizziness, migraines, fatigue, muscle cramps and weakness, ringing in her ears, severe eye pain, low line cerebellum, tingling and itching pain in her skin and sores on her skin. Tr. 124, 138, 287-300. On March 24, 2015, ALJ Rosanne M. Dummer issued a decision finding Plaintiff not disabled from August 12, 2011 through the date of the decision. Tr. 62-79. At step two of the sequential process,[4] the ALJ found Plaintiff had severe impairments of fibromyalgia, headaches and hip bursitis. Tr. 64. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. Tr. 66. Prior to step four, the ALJ then determined Plaintiff had the RFC to perform a range of unskilled light work[5] with limitations:

---

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[3] For clarity and judicial efficiency, the Court will discuss Plaintiff's issues in a different order than presented in her brief.

[4] The sequential evaluation process is described in the ALJ's decision. Tr. 63-64.

[5] The regulations define light work as work that involves:

> [Plaintiff] can lift/carry twenty pounds occasionally and ten pounds frequently; sit about six of eight hours; and stand/walk about six of eight hours. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. [Plaintiff] should avoid ropes and scaffolds. She should avoid concentrated exposure to extreme heat, extreme cold, humidity, vibration, and pulmonary irritants (i.e., fumes, odors, dusts, gases, and poor ventilation). [Plaintiff] should avoid concentrated exposure to work hazards (i.e., dangerous, moving machinery).

*Id.* Next, at step four, the ALJ found Plaintiff was unable to perform her past relevant work. Tr. 76. Relying on the testimony of the vocational expert ("VE"), the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. Tr. 77-78. As a result, she found Plaintiff was not disabled. Tr. 78.

### III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).[6] Substantial evidence is "more than a

---

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [it is determined] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

[6] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and

scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citation omitted). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

---

evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c and 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 874 F.3d 1284, 1290 (11th Cir. 2017); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

## IV. Discussion

### A. Whether substantial evidence supports the ALJ's severity findings

The ALJ did not find Plaintiff's alleged mental impairment to be severe. Tr. 64. The ALJ noted:

> [Plaintiff's] medically determinable mental impairment of generalized anxiety disorder (GAD), does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere (Exhibits 4F; 13F p. 3). [Plaintiff] has not undergone any significant mental health treatment or been hospitalized for psychological reasons. Following a psychiatric evaluation, [Plaintiff] was told to engage in individual psychotherapy once a week (Exhibit 4F). Although she testified that she could not afford treatment, she told her treating physician that she would continue treatment with her psychologist (Exhibit 3F p.5). By June 2012, [Plaintiff] reported only one episode of anxiety in two weeks (Exhibit 8F p. 2). In addition, her mental status exams on record were unremarkable (Exhibits 12F p. 27; 16F p. 38; 17F p. 6).

Tr. 65. In support, the ALJ considered four broad functional areas known as the "paragraph B" criteria.[7] Tr. 65-66. The ALJ determined Plaintiff has mild limitations in activities of daily living, no limitations in social functioning, mild limitations in concentration, persistence or pace, and has experienced no episodes of decompensation of an extended duration. Tr. 66.

In assessing Plaintiff's RFC, the ALJ discussed the medical records of Steven Cohen, Psy.D., dated April 30, 2012:

> On April 30, 2012, [Plaintiff] presented to Steven Cohen Psy. D., with complaints that something was wrong with her. Upon exam, her grooming and attire were unremarkable. She had high-pressure speech with appropriate content to affect and unremarkable mood. Although she had only fair judgment and insight, her thought process was clear and coherent. She denied suicidal or homicidal ideation. She was

---

[7] 20 C.F.R. Pt. 404, Subpt. P, App. 1.

diagnosed with generalized anxiety disorder and rule out conversion disorder. Her Global Assessment of Functioning (GAF)[8] was 50[9] and she was told to engage in individual psychotherapy once a week (Exhibit 4F).

Tr. 69, 514-17.

Plaintiff argues the ALJ should have found her mental impairment is severe because Dr. Cohen's GAF score indicates her mental impairment is severe. Doc. 19 at 16-18. She also asserts the ALJ erred by not assigning any weight to Dr. Cohen's opinion concerning the GAF score. *Id.* at 17-18. The Commissioner responds substantial evidence supports the ALJ's severity findings. Doc. 22 at 7-10.

Although Plaintiff bears the burden to prove her mental impairment is severe, the Court finds she does not meet her burden here. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)) ("[T]he claimant must show the effect of the impairment on her ability to work."). The only evidence Plaintiff submits in support of her argument is Dr. Cohen's GAF score. Doc. 19 at 16-18. As the Commissioner correctly argues, however, GAF scores are no longer endorsed for use in disability programs by the Commissioner and have no "direct correlation to the severity requirements of the mental disorders listings." *Lacina v. Comm'r, Soc. Sec. Admin.,* 606 F. App'x 520, 527 (11th Cir. 2015); Doc. 22 at 8. Furthermore, although the ALJ did not assign

---

[8] Global assessment of function ("GAF") is a numeric scale (0 through 100) mental clinicians use to rate social, occupational and psychological functioning. *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 33 (4th ed. 1994) ("DSM IV").

[9] A GAF score of 41 to 50 indicates serious symptoms or serious impairment in social, occupational, or school functioning. DSM IV.

any weight to Dr. Cohen's opinion, she discussed it thoroughly with other relevant medical evidence in her decision. Tr. 66-76. Accordingly, the Court finds the ALJ committed harmless error at most by not assigning any weight to Dr. Cohen's GAF score. *See Lacina,* 606 F. App'x at 527 (holding it was harmless error at most when the ALJ did not specifically account for GAF scores because they do not have direct corrections to the severity requirements, and the ALJ considered the evidence relevant to the claimant's mental impairments).

In addition, as the Eleventh Circuit has held, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Thus, even if the ALJ here erred by finding Plaintiff's mental impairment is non-severe, that was harmless because the ALJ found Plaintiff has other severe impairments, and "that finding is all that step two requires." *Id.* at 825; *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."). Thus, the Court finds substantial evidence supports the ALJ's severity findings, and even if the ALJ erred, the error was harmless. Nonetheless, because this case must be remanded on another ground, the Court will direct the ALJ to re-assess the severity of Plaintiff's impairments.

## B. *Whether substantial evidence supports the ALJ's RFC findings*

As noted, at step two, the ALJ determined Plaintiff has mild limitations in concentration, persistence or pace. Tr. 66. The ALJ discussed, "[Plaintiff] testified that she often forgets words like 'hoodie' and 'toothbrush' and has to stand in front of her stove for 20 minutes to decide what knob to turn. No record evidence corroborates this or concentration problems." *Id.*

The ALJ further considered the extent to which her alleged mental impairment and migraine headaches affected her RFC and limited her RFC to unskilled light work. Tr. 66-76. After extensively discussing Plaintiff's relevant medical records, the ALJ explained:

> No mental health treatment is indicated; it appears [Plaintiff] sought to establish a physical basis for complaints. The undersigned included in the [RFC] unskilled work, to the extent that [Plaintiff's] complaints may preclude the concentration required for complex directions and work tasks. . . .
>
> [B]ased on [Plaintiff's] testimony and the evidence at the hearing level, the undersigned included in the [RFC], a range of light work, with occasional postural activities and avoidance of dangerous, moving machinery. This is based on the overall record evidence given assessments of fibromyalgia, hip bursitis, and migraine headaches, which cause pain and dizziness (Exhibits 2F; 19F). [Plaintiff] may avoid concentrated exposure to extreme heat, extreme cold, humidity, vibration, and pulmonary irritants, such as fumes, odors, dusts, gases, and poor ventilation due to her migraines and nonsevere impairment of COPD (Exhibits 10F; 15F; 17F). . . . The undersigned included in the [RFC] unskilled work, to the extent that [Plaintiff's] complaints may preclude the concentration required for complex directions and work tasks. This is also based on reported headaches and somatic complaints.

Tr. 74, 76.

Plaintiff argues the limitation of unskilled work does not sufficiently account for her difficulty in concentration, persistence or pace. Doc. 19 at 14. She further asserts the ALJ did not explain what limitations her migraines caused. *Id.* at 14-15. Plaintiff also claims the ALJ did not fully develop the record because the ALJ did not sufficiently question her about her migraines during the hearing before the ALJ. *Id.* at 15. The Commissioner did not address this argument. *See generally* Doc. 22.

The Court finds the ALJ properly developed the record and sufficiently accounted for her difficulty in concentration, persistence or pace. The Eleventh Circuit has held, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Winschel,* 631 F.3d at 1180 (citations omitted); *see Hurst v. Comm'r of Soc. Sec.,* 522 F. App'x 522, 525 (11th Cir. 2013); *Smith v. Comm'r of Soc. Sec.,* 486 F. App'x 874, 876-77 (11th Cir. 2012); *Jarrett v. Comm'r of Soc. Sec.,* 422 F. App'x, 869, 872 n.1 (11th Cir. 2011).

Here, the ALJ found Plaintiff has only mild limitations in concentration, persistence or pace because, although Plaintiff "testified that she often forgets words like 'hoodie' and 'toothbrush' and has to stand in front of her stove for 20 minutes to decide what knob to turn[, n]o record evidence corroborates this or concentration problems." Tr. 66. Nonetheless, the ALJ limited Plaintiff's RFC to unskilled work because "[Plaintiff's] complaints may preclude the concentration required for complex directions and work tasks." Tr. 74, 76. Plaintiff does not provide any medical

findings contradicting the ALJ's findings or showing she is more limited than what the ALJ opined. Doc. 19 at 13-15; *see Wind*, 133 F. App'x at 690 (citing *McCruter*, 791 F.2d at 1547). Thus, the Court finds the ALJ sufficiently accounted for Plaintiff's difficulty in concentration, persistence or pace in her RFC findings.

Furthermore, the ALJ fully developed the record by discussing in detail throughout her decision Plaintiff's medical records related to her migraines. The ALJ explained:

> In 2012, Dr. Kibria diagnosed [Plaintiff] with low-lying cerebellum and stated that it probably caused her migraines and dizziness; however, he stated that nothing could be done to treat it. [Plaintiff] noted that although Dr. Kibria's name does not appear in the CD of exhibits, his report was included in Exhibit 12F. . . .
>
> On April 4, 2012, [Plaintiff] saw neurologist, Adam L. Heller, M.D. Upon exam, she was alert and oriented to person, place, and time with intact memory, attention, and fund of knowledge. Her cranial nerves were normal and her motor exam was unremarkable in her upper and lower extremities. She had no tremor or abnormal movements and her light touch, pinprick, and vibratory sensation were intact. [Plaintiff] also had intact finger-to-nose and heel-to-shin movements. Her Romberg was absent and her rapid alternating movements were intact. Her gait was normal. She was diagnosed with classical migraine, paresthesias, and unspecified visual disturbance. Dr. Heller noted that [Plaintiff's] headaches might have been a component of migraine headaches that she had low-lying cerebellar tonsils of unclear clinical significance (Exhibit 2F pp. 6-8). . . .
>
> Emergency room records indicate that she had a normal head CT. She was given Reglan, magnesium, and IV fluids that controlled her headaches. She was diagnosed with mild dehydration secondary to solar exposure and classic migraine (Exhibit 16F pp. 5, 8). . . .
>
> The record reflects that [Plaintiff] has been diagnosed with migraine headaches and that she alleged sensitivity to light throughout the record; however, her head CTs were unremarkable and medications administered at the emergency room controlled her headaches (Exhibits 1F p. 9; 16F pp. 5, 8). In addition, her neurological exams were normal

> (Exhibits 2F pp. 6-8; 6F; 13F p. 10; 16F p. 38). [Plaintiff] has received conservative care and uses mostly homeopathic remedies to consist of auriculotherapy with cold lasers, acupressure, accupatch, accupoint with California wild roses, massage, over the counter herbs, and chiropractic (Exhibits 3F p. 5; 10F p. 5; 15F p. 5). These remedies appear to help, as [Plaintiff] stated that her headaches decreased in severity and frequency (Exhibit 3F p. 4). . . .

Tr. 68-70, 73-74. Based on these findings, the ALJ determined her RFC findings sufficiently accounted for Plaintiff's migraine headaches. Tr. 76.

It is the ALJ's responsibility to assess a claimant's RFC at the hearing level, and such "task of determining a claimant's RFC and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). Here, the ALJ correctly exercised her discretion to assess Plaintiff's RFC and further supported the decision with her detailed analysis of Plaintiff's medical records. Tr. 66-76. Thus, the Court finds the ALJ properly developed the record and assessed Plaintiff's RFC. Nonetheless, because this case must be remanded on another ground, the Court will direct the ALJ to re-evaluate of Plaintiff's RFC.

### C. Whether new evidence submitted to the Appeals Council warrants remand

Plaintiff submitted to the Appeals Council the medical records concerning her heart and pulmonary conditions of a time period from April 20, 2015 to June 5, 2015. Tr. 8-45. The records show Plaintiff was diagnosed with severe chronic obstructive pulmonary disease, pulmonary emphysema, congestive heart failure, tobacco dependence syndrome and primary fibromyalgia syndrome. Tr. 39. The Appeals Council considered these records and decided:

> We also looked at the records from Lehigh Medical Group, covering the period April 10, 2015 through June 5, 2015 (38 pages). The [ALJ] decided your case through March 24, 2015. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before March 24, 2015. If you want us to consider whether you were disabled after March 24, 2015, you need to apply again. . . .

Tr. 2.

Plaintiff argues her new evidence is material because it reveals her heart problems. Doc. 19 at 12. She further asserts the new evidence relates to the period adjudicated by the ALJ and thus requires remand to the Commissioner. *Id.* at 12-13. The Commissioner responds the new evidence is not chronologically relevant and does not undermine the ALJ's findings. Doc. 22 at 4-7.

"[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262 (citation omitted). Although the Appeals Council has the discretion not to review the ALJ's denial of benefits, *see* 20 C.F.R. § 416.1470(b), it "must consider new, material, and chronologically relevant evidence" that the claimant submits. *Ingram,* 496 F.3d at 1261; *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b); *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). New evidence is chronologically relevant if "it relates to the period on or before the date of the hearing decision." 20 C.F.R. § 416.1470(b). Evidence is material when, "if accepted, 'there is a reasonable possibility' that [it] 'would change the administrative result.'" *Washington*, 806 F.3d at 1321 (citation omitted).

The Court finds the medical records from April 20, 2015 to June 5, 2015 are chronologically relevant. A medical opinion "based on treatment occurring after the date of the ALJ's decision may be chronologically relevant" if the medical provider reviewed the claimant's past medical history, and the opinion concerns a condition that existed before the ALJ's decision. *Washington*, 806 F.3d at 1322-23. Here, Plaintiff's heart conditions are related to her complaints of chest pain pre-dating the ALJ's decision. Although the ALJ correctly noted Plaintiff's chest x-ray dated April 10, 2014 showed chronic obstructive pulmonary disease ("COPD"), "but no acute cardiothoracic abnormalities or significant change," she continued to experience chest pain and complained of irregular heartbeat before the ALJ's decision. Tr. 73, 734, 736, 741, 743-44, 749, 757, 759. On January 28, 2014, Plaintiff visited the emergency room for her irregular heartbeat and chest pain. Tr. 743. She reported she experienced daily irregular heartbeat for several months prior to this visit, and her irregular heartbeat sometimes occurred throughout the entire day. *Id.* She further noted although she experienced heart palpations for one year, she began to suffer heart-related episodes more frequently, which also lasted longer. Tr. 749. She reported her heart beat slowly, then "clicked" and hurt her chest. *Id.* Plaintiff's electrocardiogram test dated January 28, 2014 was "borderline," revealing sinus rhythm, probable left arterial abnormality, borderline right axis deviation and borderline T-wave abnormalities, anterolateral leads. Tr. 746-47. Khaza Chowdhury, M.D., who examined the test, noted Plaintiff's cardiac enzymes and

echocardiogram were negative and discharged her, instructing her to follow up with her primary care physician. Tr. 757.

One month after the ALJ's decision, on April 20, 2015, Plaintiff saw Sadiq Al-Nakeeb, M.D., for her COPD. Tr. 23. During this visit, she reported her heart skipped every other heartbeat, she had been sick with COPD for three years and her father possibly suffered from a heart disease. Tr. 24. On April 23, 2015, Plaintiff underwent an echocardiogram, which revealed her overall left ventricular systolic function was severely reduced with an ejection fraction between 25% and 30%, her left ventricle had stage 1, mild diastolic dysfunction and her mitral valve was thickened with restrictive opening. Tr. 28-29. On May 4, 2015, Dr. Al-Nakeeb diagnosed Plaintiff with congestive heart failure after reviewing Plaintiff's echocardiogram. Tr. 28-29, 39.

Because Plaintiff consistently complained of similar heart-related symptoms in the past and was diagnosed of congestive heart failure only approximately one month after the ALJ's decision, the Court cannot find her heart conditions are new or deteriorated during the period following the ALJ's decision. *Washington*, 806 F.3d at 1322-23. Furthermore, the new evidence reveals the significantly worsened condition of Plaintiff's heart and chest, which contradicts Plaintiff's unremarkable chest x-rays and electrocardiogram results considered by the ALJ. Tr. 8-45, 734, 741, 746-47, 759. Accordingly, the Court finds the new evidence is new, material and chronologically relevant, and will remand this case for the Commissioner to consider this evidence. *Washington*, 806 F.3d at 1322-23.

## V. Conclusion

Upon review of the record, the undersigned concludes that for the reasons cited in this Opinion and Order, the Appeals Council erred by finding the new evidence is not chronologically relevant.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The decision of the Commissioner is **REVERSED,** and this matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to:

    A. Re-evaluate the severity of Plaintiff's impairments and RFC;

    B. Consider and assess the new medical records submitted to the Appeals Council (Tr. 8-45); and

    C. Conduct any further proceedings deemed appropriate.

2. The Clerk of Court is directed to enter judgment in favor of Plaintiff Melissa D. Gilbert and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 29th day of March, 2018.

*/s/ Carol Mirando*
CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record